### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

GREGORY A. PRESLEY,

     Petitioner,

v.                              Case No. 1:21-cv-49-AW-MJF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Gregory A. Presley has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, Doc. 9, providing relevant portions of the state court record, Doc. 13. Presley replied. Doc. 12. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Presley is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

On November 27, 2013, Presley pleaded *nolo contendere* to drug charges in two Alachua County Circuit Court cases: Case No. 2013-CF-1212, and Case No. 2013-CF-1213. *See* Doc. 13, App. A at 46-50, 145-49 (Plea Agreement in each case).[2] Pursuant to Presley's plea agreements, he was convicted in each case of one count of Sale of Cocaine, and one count of Possession of Cocaine. *Id*. Presley was sentenced on each count, in each case, to 364 days of imprisonment in the county jail (with 225 days' credit for time served) followed by 2 years on drug offender probation, all terms to be served concurrently. App. A at 31-34, 130-133 (J. & Sentence in each case); App. A at 38-45, 137-144 (Order of Drug Offender Probation in each case).

On January 29, 2015, Presley was charged with violating his probation. App. A at 65-70, 155-160. The Florida Supreme Court described the circumstances underlying the VOP charge:

> At the time of the events in this case, Gregory Presley was on drug offender probation. A special condition of the probation provided, "You will abstain entirely from the use of alcohol and/or illegal drugs, and you will not associate with anyone who is illegally using drugs or consuming alcohol."

---

[2] Citations to the state-court record are to the electronically-filed appendices provided with the State's answer, Doc. 13. The court cites the lettered appendix followed by the page number according to the Bates stamp number on the bottom center of the page.

During the early morning hours of January 29, 2015, Gainesville police officer Tarik Jallad conducted a traffic stop of a vehicle for a faulty taillight and a stop sign violation. Presley was one of two passengers in the vehicle. Officers John Pandak and Joshua Meurer subsequently responded to the scene based upon a request for backup due to a struggle occurring with the other passenger, who had exited the vehicle and attempted to leave. At the time of their arrival, Officer Jallad and a second officer were dealing with that passenger, who was in handcuffs and behaving belligerently. Presley and the driver were standing outside of the vehicle. Officer Pandak approached Presley and asked for his name and identification, both of which Presley provided. Presley volunteered his date of birth. Officer Pandak asked general questions, and Presley stated that the group had been at his aunt's house. During the interaction, Presley admitted he had been consuming alcohol.FN2 When Presley asked, "So what is the problem?" Officer Pandak responded, "I don't know, man. This is a traffic stop, you're part of it. So we're hanging out. That's all there is to it." Officer Pandak later stated, "Well, we're just talking, man. You can't go anywhere at the moment because you're part of this stop. That's all." After a background check revealed Presley was on drug offender probation with the special condition that he not consume alcohol, Presley was arrested for the violation of probation. During the search incident to arrest, Officer Pandak recovered a plastic bag containing powder cocaine from Presley's pocket.

> FN2  Officer Meurer could smell alcohol on Presley, and he heard Presley say he had been "drinking all day."

*Presley v. State*, 227 So. 3d 95, 96-97 (Fla. 2017).

Presley's trial counsel filed a motion to suppress Presley's statements to law enforcement—as well as the cocaine seized from him—claiming that Presley was illegally detained during the traffic stop. App. A at 324 (Mot. to Suppress), 193-287 (Tr. of Suppression and Violation of Probation Hr'g.). The state circuit court denied

the motion to suppress, concluding that although Presley was detained, the limited nature and duration of the detention did not significantly interfere with his Fourth Amendment liberty interests.

Immediately following the suppression hearing on September 28, 2015, the VOP court conducted an evidentiary hearing on the VOP charges, determined that Presley committed willful and substantial violations of his probation in each case, and revoked Presley's probation. App. A at 77-84, 172-179. The VOP court sentenced Presley in Case No. 2013-CF-1212, to 15 years of imprisonment for Sale of Cocaine, and to a concurrent term of 5 years of imprisonment for Possession of Cocaine. App. A at 172-179. The VOP court sentenced Presley in Case No. 2013-CF-1213, to 15 years of imprisonment for Sale of Cocaine, and to a concurrent term of 5 years of imprisonment for Possession of Cocaine, to run concurrently with the sentences in Case No. 2013-CF-1212. App. A at 77-84 (J. & Sentence), 309-311 (Am. J. & Sentence).

Presley appealed, challenging: (1) the circuit court's denial of his motion to suppress, and (2) the sufficiency of the evidence to support the revocation of probation. App. B. The Florida First District Court of Appeal ("First DCA") affirmed. *Presley v. State*, 204 So. 3d 84 (Fla. 1st DCA 2016). The First DCA

certified that its decision on the Fourth Amendment issue was in direct conflict with a decision of the Florida Fourth District Court of Appeal.

The Florida Supreme Court accepted jurisdiction of the case and approved the First DCA's decision. The court held that, "as a matter of course, law enforcement officers may detain a vehicle's passengers for the reasonable duration of a traffic stop without violating the Fourth Amendment." *Presley*, 227 So. 3d at 107-08. On February 20, 2018, the United States Supreme Court denied Presley's petition for certiorari review. *Presley v. Florida*, 138 S. Ct. 1007 (2018) (Mem.).

On May 22, 2019, Presley filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. App. R. The state circuit court denied the motion. App. T at 49-102 (Order & Attach.). The First DCA affirmed *per curiam* and without written opinion. *Presley v. State*, No. 1D20-1865, 2021 WL 72179 (Fla. 1st DCA Jan. 8, 2021) (Table) (copy at App. W). The mandate issued February 5, 2021. App. X.

Presley filed his *pro se* federal habeas petition on March 22, 2021. Doc. 1 at 22 in ECF.[3] Presley's petition raises two grounds of ineffective assistance of trial counsel. Specifically, Presley claims that counsel (1) failed to properly advise

---

[3] Citations to page numbers of Presley's petition are to the numbers assigned by this court's Electronic Case Filing system ("ECF").

Presley concerning an 8-year plea offer, and (2) failed to press the additional suppression argument that the traffic stop was pretextual. Doc. 1 at 9-13.

Neither party has addressed the timeliness of Presley's petition. *See* Doc. 1 at 18-19; Doc. 9.[4] The parties agree that Presley exhausted his claims by presenting them to the state circuit court in his Rule 3.850 proceeding and appealing the circuit court's rulings on the merits. Doc. 1 at 9-14; Doc. 13 at 14-15, 19. The State asserts that Presley is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard.

## II.  RELEVANT LEGAL PRINCIPLES

### A.    <u>Section 2254 Standard of Review</u>

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

---

[4] It appears that more than one year passed between the United States Supreme Court's denial of certiorari review on February 20, 2018, and Presley's filing of his state postconviction motion on May 22, 2019. *See* 28 U.S.C. § 2244(d)(1).

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court first must determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the

---

[5] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application"

clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v.*

> *Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979) (Stevens, J., concurring in judgment). As a condition for
> obtaining habeas corpus from a federal court, <u>a state prisoner must
> show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility
> for fairminded disagreement.</u>

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## B.    <u>Federal Law Governing Claims of Ineffective Assistance of Counsel</u>

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371

(2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III. DISCUSSION

**<u>Ground One</u>**    **<u>"Trial Counsel was ineffective where it failed to prope[r]ly advise as to state[']s plea of eight years." Doc. 1 at 9.</u>**

Presley alleges that prior to the combined suppression and VOP hearing, the State offered him an 8-year plea deal. Presley claims that trial counsel was ineffective because he failed to advise Presley that if he went through with the suppression hearing, the State's plea offer would be null and void. Doc. 1 at 9-10. Presley presented this claim to the state courts as "Issue One" of his Rule 3.850 motion. App. R at 40-41.

**A.**    *The State Court's Decision*

The state circuit court denied relief on the merits. App. T at 49-102. The court

identified the two-pronged *Strickland* standard as the controlling legal standard,

App. T at 50-51, and denied relief as follows:

> As to Ground One, Defendant alleges that trial counsel was ineffective for failing to properly advise defendant of the state's plea offer. According to Defendant, counsel misled him to believe that a negotiated plea agreement would be obtained if he lost at the suppression hearing. Defendant contends that he would have accepted the State's initial plea offer of 8 years' imprisonment in the Department of Corrections had he known that the suppression hearing and violation of probation hearing would be combined. *See* Motion to Suppress and Violation of Probation Hearing Transcript at 3 (lines 12-25) – 4 (lines 1-3).
>
> In order for a defendant "to establish prejudice [caused by a lost plea offer], the defendant must allege and prove a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he or she would have accepted the offer had counsel advised the defendant correctly, 2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Alcorn v. State*, 121 So.3d 419, 422 (Fla. 2013). Here, it appears from the record that the State withdrew its offer/recommendation when Defendant decided to proceed to the suppression hearing instead of entering a plea. After the suppression/violation of probation hearing, the State requested that the court sentence Defendant to a total of 12 years' imprisonment in the Department of Corrections for both cases. *See* Motion to Suppress and Violation of Probation Hearing Transcript at 87 (lines 19-25) – 88 (lines 1-25). However, even if the State had no[t] withdrawn its offer, it is clear from the record that the court would not have accepted a negotiated plea to a sentence of 8 years.

Page 13 of 24

First, the court was aware that the probation officer's recommended sentence was 4 years' imprisonment, which was the lowest permissible sentence permitted based on the scoresheet and the same sentence that the defense was requesting the court to impose. *Id*. at 63 (lines 3-10), 85 (lines 8-23); *see also* Scoresheet.

Second, the court was aware from the scoresheet and the record that Defendant had an extensive criminal history, including 7 prior periods of incarceration in the Department of Corrections. *Id*. at 86 (lines 23-25) – 88 (lines 1-25). In imposing sentence, the court relied upon Defendant's criminal history, as well as the fact that Defendant committed a new Possession of Cocaine offense while on probation for Sale of Cocaine and Possession of Cocaine, to find that the appropriate sentence was the one which it ultimately imposed. *Id*. at 89 (lines 13-25 – 91 (lines 1-7). In that regard, the sentencing court expressly stated that Defendant had "received an inordinate amount of mercy in his benefit from the prior courts who have sentenced him." *Id*. at 91 (lines 5-7).

For the foregoing reasons, Defendant fails to show either error by counsel or prejudice. Accordingly, the claim raised is without merit.

App. T at 51-53. The First DCA summarily affirmed without explanation. App. W.

## B.    *Presley Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Presley's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that §

Page 14 of 24

2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Where, as here, there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, federal courts employ the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018). Consistent with *Wilson*, this court presumes that the First DCA rejected Presley's claim for the reasons provided by the state circuit court.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard, including the prejudice standard later developed in *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012). In *Lafler*, the Court explained that in order to establish prejudice under *Strickland* when counsel's ineffective advice led to rejection of a plea offer, the petitioner must show that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or

> both, under the offer's terms would have been less severe than under
> the judgment and sentence that in fact were imposed.

*Lafler*, 566 U.S. at 164; *see also Frye*, 566 U.S. at 147.

To obtain habeas relief, therefore, Presley must show that the state court's application of the *Strickland* standard (as developed in *Lafler* and *Frye*) was unreasonable. In reviewing the reasonableness of the state court's decision, this court will defer to the state court's factual findings, because they are amply supported by the record and because Presley has not rebutted them with clear and convincing evidence to the contrary. *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)).

Presley argues that the state postconviction court's conclusion—that it was not substantially likely that the VOP court would have accepted an 8-year plea deal—was unreasonable because the postconviction court considered facts that the VOP court would not have reviewed had the parties presented it with an 8-year plea agreement. Doc. 1 at 10. The Court in *Frye*, however, *approved* the type of analysis employed by the state postconviction court in this case. The Supreme Court said:

> It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain. The determination that there is or is not a reasonable probability that the outcome of the proceeding would have been different absent counsel's errors can be conducted within that framework.

*Frye*, 566 U.S. at 149.

Consistent with *Frye*, the state postconviction court reviewed the VOP record and noted a number of facts—within that record—that were relevant to assessing the probability of judicial approval of an 8-year plea deal. Those relevant facts included: Presley's extensive criminal history including prior convictions for drug offenses; Presley's serial violations of probation in prior cases; Presley's conduct underlying the current VOP charge while on probation for four drug offenses; the lack of deterrent effect of prior, shorter sentences on Presley's propensity to reoffend; and the VOP sentencing court's assessment of the appropriate sentence and divergence from the parties' sentencing recommendations. The state postconviction court then made an objective assessment as to the likelihood of judicial approval of an 8-year plea deal. Applying *Frye*'s framework to the state postconviction court's findings of fact, a fairminded jurist could agree with the state court's conclusion that it was unlikely that an 8-year plea deal would have been judicially approved.

Because it is not clear that the state postconviction court erred at all, "much less erred so transparently that no fairminded jurist could agree with that court's decision," *Bobby v. Dixon*, 565 U.S. 23, 24 (2011), Presley is not entitled to federal habeas relief. *See also, e.g., Davis v. Ayala*, 576 U.S. 257, 269-70 (2015) (confirming that "a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness;" and that a habeas petitioner "must show that the state court's decision to reject his claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." (internal quotation marks and citations omitted)).

**Ground Two**       **"Trial Counsel was ineffective for failing to move to have petitioner's statements and cocaine suppressed due to pre-textual stop." Doc. 1 at 12.**

Presley claims that trial counsel was ineffective during the suppression hearing for failing to develop testimony and argument that the traffic stop was pretextual. Doc. 1 at 12-13. Presley alleges that the stop, which was conducted for having a faulty taillight and committing a stop sign violation, was actually pretextual as evidenced by the fact that the driver was not cited. Presley presented this claim to the state courts as "Issue Two" of his Rule 3.850 motion. App. R at 41-42.

**A.**   ***The State Court's Decision***

The state circuit court denied relief on the merits. App. T at 49-102. The court

identified the two-pronged *Strickland* standard as the controlling legal standard,

App. T at 50-51, and denied relief as follows:

> As to Ground Two, Defendant alleges that trial counsel was
> ineffective for failing to move to suppress Defendant's statements to
> law enforcement and the cocaine found in his vehicle [sic] based on the
> pretextual nature of the stop. According to Defendant, the driverFN3 of
> the vehicle which was stopped was never cited for a traffic violation;
> therefore, the stop was unlawful.

> FN3  Defendant was a passenger in the vehicle.

> "Under search and seizure law, the stopping of a motorist is
> reasonable where a police officer has probable cause to believe a traffic
> violation has occurred." *Hurd v. State*, 958 So.2d 600, 602 (Fla. 4th
> DCA 2007) (citing *Whren v. United States*, 517 U.S. 806, 810, 116 S.
> Ct. 1769, 135 L.Ed.2d 89 (1996)). "The test is whether a police officer
> could have stopped the vehicle for a traffic violation." *Id*. "The actual
> subjective motivation of the individual officer involved is irrelevant
> and should not factor into an ordinary, probable-cause Fourth
> Amendment analysis." *State v. Proctor*, 161 So. 3d 409, 411 (Fla. 5th
> DCA 2014) (citing *Whren*, 517 U.S. at 813, 116 S. Ct. 1769). Here,
> Officer Jallad stopped the vehicle at issue based on taillight and stop
> sign violations. *See* Motion to Suppress and Violation of Probation
> Hearing Transcript at 48 (lines 10-19).FN4 Thus, the stop was lawful.
> Had counsel moved to challenge the stop, the motion would have been
> denied. For this reason, Defendant fails to show either error by counsel
> or prejudice. Accordingly, the claim raised is without merit.

> FN4   *See also Presley*, 227 So. 3d at 96 (Fla. 2017)
> ("During the early morning hours of January 29, 2015,
> Gainesville police officer Tarik Jallad conducted a traffic

Page 19 of 24

stop of a vehicle for a faulty taillight and a stop sign violation.").

App. T at 53-54. The First DCA summarily affirmed without explanation. App. W.

**B.    *Presley Is Not Entitled to Habeas Relief***

The First DCA's summary affirmance is an "adjudication on the merits" of Presley's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA rejected Presley's claim for the reasons provided by the state circuit court. *Wilson*, 138 S. Ct. at 1192.

The state court's decision is not "contrary to" clearly established Federal law, because the state court identified and applied the two-part *Strickland* standard. The state court also analyzed the viability of Presley's underlying suppression argument, consistent with the Supreme Court's holding in *Kimmelman v. Morrison*, 477 U.S. 365 (1986). *See Kimmelman*, 477 U.S. at 375 ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

The state court's rejection of Presley's claim was not an unreasonable application of the *Strickland* standard. Presley's theory of his ineffective-assistance claim rests on the assumption that an attack on the traffic stop as pretextual provided a viable basis to seek suppression of his statements and the cocaine in his possession. As the state court reasonably determined, Presley's proposed argument would not have succeeded. The fact that the officer did not issue the driver a citation does not defeat the existence of probable cause to stop the vehicle for taillight and stop-sign violations. *See Whren*, 517 U.S. at 810, 813; *State v. Holland*, 680 So. 2d 1041 (Fla. 1st DCA 1996).

Because Presley's proposed suppression argument lacked merit, trial counsel was not ineffective for failing to press it at the suppression hearing. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."); *Freeman v. Attorney Gen. Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."); *Brownlee v. Haley*, 306 F.3d 1043, 1066-67 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state court's rejection of Presley's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Presley is not entitled to habeas relief on Ground Two.[6]

## IV.  A Certificate of Appealability Is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice

---

[6] Presley's reply makes the new allegation that he "was not a passenger at all in the vehicle, that he was an instant innocent bystandard [sic] whom was standing in a yard where the car pulled into." Doc. 12 at 4. The District Court cannot consider this new underlying theory of ineffective assistance. Presley did not present this theory in his habeas petition. *See* Doc. 1. And Presley did not present this theory to the state courts. *Ogle v. Johnson*, 488 F.3d 1364, 1369 (11th Cir. 2007) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously." (internal quotation marks and citation omitted)). Even if the District Court were inclined to consider Presley's new theory, it would fail. Presley does not allege that he told counsel this new version of the traffic stop. Finally, Presley's new allegation also runs counter to the state court's factual finding that he was a passenger in the vehicle. *See* 28 U.S.C. § 2254(e)(2); *see also Presley*, 227 So. 3d at 85; *Presley*, 204 So. 3d at 96; Doc. 13, App. T at 53 n.3.

of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The petition for writ of habeas corpus, Doc. 1, challenging the judgment of conviction and sentence in *State of Florida v. Gregory Allen Presley*, Alachua County Circuit Court Case Nos. 2013-CF-1212 and 2013-CF-1213, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case file.

At Pensacola, Florida, this <u>19th</u> day of August, 2022.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**